IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 17, 2004

## TAMMY BARKER v. VERNON BARKER

**An Appeal from the Chancery Court for Shelby County**
**No. CH-01-2407     D. J. Alissandratos, Chancellor**

---

**No. W2003-01989-COA-R3-CV - Filed August 23, 2004**

---

This is a divorce case. The parties were married for three years prior to their separation, and two children were born during the marriage. The mother filed a petition for divorce, and the father filed a counterclaim for divorce. After a bench trial, the trial court entered a final decree of divorce and a parenting plan. In the plan, the father was permitted supervised visitation with the children, but was required to undergo a psychological evaluation in order to continue that visitation. The plan also provided that the children's guardian ad litem would be the "binding arbitrator" on all matters involving the father's visitation. The father now appeals, claiming that the trial court erred in requiring him to undergo a psychological evaluation and in appointing the guardian ad litem as the arbitrator on matters involving his visitation schedule. Because the father did not properly object to the issues raised on appeal, they are deemed to be waived. Therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

William T. Winchester, Memphis, Tennessee, for the appellant, Vernon Barker.

Julie D. Byrd, Bartlett, Tennessee, for the appellee, Tammy Barker.

### OPINION

Plaintiff/Appellee Tammy Barker ("Mother") and Defendant/Appellant Vernon Barker ("Father") were married for three years prior to their separation. On November 2, 2001, Mother filed a petition for divorce in the trial court below on the basis of irreconcilable differences. At the time Mother's petition was filed, the parties had one son born during the marriage, Jacob Wayne Barker (born July 7, 1999), and Mother was pregnant with the parties' daughter, Hollie Barker, who was born March 22, 2002. On August 28, 2002, Mother filed an amended petition for divorce to include the statutory grounds of inappropriate marital conduct, cruel and inhuman treatment, and abandonment. On October 4, 2002, the trial court entered a consent order requiring Father to pay

Mother $480 per month in child support. On November 20, 2002, Father filed an answer and a counterclaim for divorce, admitting irreconcilable differences but denying the additional fault-based grounds for divorce.

On November 27, 2002, Mother filed a petition to appoint a Guardian Ad Litem ("Guardian") for the children. Mother requested that the trial court appoint the same Guardian who represented Father's other two children from a previous marriage.[1] On June 3, 2003, the trial court entered a consent order appointing the requested Guardian for Jacob and Hollie *nunc pro tunc* to December 13, 2002. The order states, among other things, that "[t]he [Guardian] fees are support and maintenance of the minor child(ren) and shall be subject to the same terms and conditions that generally apply to child support."

Meanwhile, on December 12, 2002, Father filed an affidavit of indigency. Father's affidavit stated that he earned $586.60 per week, and that he had unencumbered assets of $7,610 in vehicles and $1,500 in household furniture. On January 21, 2003, the trial court entered an order allowing Father to proceed as an indigent person.

On May 22, 2003, Father filed a petition to reduce his child support obligation, asserting that he was terminated from his employment on March 23, 2003. At the time Father's petition was filed, he was receiving $275 per week in unemployment compensation.

On May 29, 2003, Father filed a proposed parenting plan, proposing that (1) Mother be designated as the primary residential parent for the parties' two children; (2) Father's visitation schedule "shall be established and adjusted as recommended by the Guardian Ad Litem;" (3) Father have restrictions on his residential time because of the "absence of or substantial impairment of emotional ties between the children and parent;" and that (4) parenting disputes would be resolved by "Court hearings only because there is an ORDER OF PROTECTION OR OTHER RESTRICTIONS." Father signed the proposed parenting plan, which included the following oath:

> UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF TENNESSEE, I MAKE OATH THAT THIS PLAN HAS BEEN PRESENTED TO THE COURT IN GOOD FAITH AND THAT IT IS IN THE BEST INTEREST OF THE CHILDREN AND THAT THE STATEMENTS CONTAINED HEREIN ARE TRUE AND CORRECT.

The plan was also signed by Father's trial counsel, who does not represent Father in this appeal.

On May 30, 2003, Mother filed her proposed parenting plan. In her plan, Mother proposed that she be designated the primary residential parent of the children, and that Father's standard bill of rights be curtailed "for the protection of the children." Mother proposed that Father have one hour of visitation every other week, and that Father's visitation be supervised and conducted by the

---

[1]Father had supervised visitation with his two children from the previous marriage.

Exchange Clubs Family Centers, with the costs of such visitation to be paid solely by Father. By checking the appropriate box on a pre-printed form, Mother asked that Father's visitation be restricted and supervised because of:

        I.  physical abuse, sexual abuse, or a pattern of emotional abuse;

        ii.  a history of acts of domestic violence or an assault or sexual assault which has caused grievous bodily harm or the fear of such harm;

        iii.  neglect or substantial non-performance of parenting functions;

        iv.  absence of or substantial impairment of emotional ties between the child and the parent; and

        v.  abusive use of conflict by the parent which creates the danger of serious damage to a child's psychological development.

Mother's proposed plan also provided that she would have sole decision-making authority over the children.

The bench trial was held on June 3, 2003. A transcript of the proceedings was not made, and there is no statement of the evidence or other record of those proceedings filed in this appeal.

On July 9, 2003, the trial court held an in-chambers conference in order to determine the agreeable wording of certain provisions in the permanent parenting plan, consistent with the trial court's findings at the conclusion of the trial. A court reporter was present at this conference and a transcript of it was made. Present at the conference were counsel for Mother, counsel for Father, and the Guardian. The parties apparently were not present. The discussion at the conference alludes to some confusion as to whether the trial court had issued a "no contact" order between Father and Mother at trial. In arguing that the trial court should issue such an order, the Guardian stated that "Father has been emotionally abusive, has used the children in a conflict, has an overbearing personality, and when given an inch, tends to take a mile. That's the summary, Your Honor." Counsel for Mother also argued that a no contact order should be issued. Mother's attorney noted that Father had sent a letter directly to Mother, and that, after the trial, Father sent birthday cards to Jacob that contained messages that were actually intended for Mother.[2] Mother's attorney argued that Father's attempt to send messages to Mother through birthday cards addressed to Jacob was abusive. After counsel for Mother offered the cards to the trial court for inspection, the trial court stated that it would give counsel for Father the opportunity to avoid "pushing the issue" by

---

[2]Though the birthday cards were not admitted into evidence at the in-chambers conference, they were added as a supplement to the record on appeal. In the cards, Father stated that he loves Jacob and misses him. Father also stated, "I look at your picture constantly during the day," and "It is not my fault I can't see you, I would see you every day if it was up to me," and "I can't wait to see you again."

stipulating that Father was the predominant cause of the parties' communication problems. At that point, counsel for Father stipulated "on the record that [Father] has taken actions which would be sufficient to uphold a No Contact order." In light of the stipulation, the trial court indicated that a no contact order would be made a part of the final decree, and that the parties would be required to communicate through the Guardian, with Father paying 100% of the Guardian's fees.

Later in the in-chambers conference, the trial court alluded to a ruling apparently made at trial that Father would be required to undergo a psychological evaluation, at Father's expense, within eight months of the date of the decree. It was indicated that, if he failed to do so, his visitation at the Exchange Club would be discontinued. The trial court instructed the parties to include such language in the decree. The following colloquy took place between the trial court and the Guardian:

> [Court:] Two point nine, I need for [Father] to agree – or not agree – but I will require him to sign any waivers that Dr. Ciocca requires, because Ciocca is not only going to be evaluating him, but treating him. And that is going to require a waiver so that he, professionally, doesn't get into any problems on that.
> And this is of an economic benefit to the father so that he doesn't have to go see an evaluating person and then a treating person who starts basically from the scratch. So that is the reason why it is good to use the same person. . . .
>
> [Guardian:] Yes. Your Honor actually ordered a two-tiered situation, which is he has eight months [visitation] at the Exchange Club and then he has to have had a full evaluation or his visitation at the Exchange Club stops.
>
> [Court:] Right.
>
> [Guardian:] Then it is contemplated that I will make some recommendations –
>
> [Court:] Based upon his success of the treatment?
>
> [Guardian:] Correct.
>
> [Court:] I understand that. And with that in mind, then fine. I will submit that to the Guardian ad Litem. Payment of the Guardian ad Litem expenses should be determined by the Guardian ad Litem.

There is no indication that Father's counsel objected during the trial to the requirement that he undergo a psychological evaluation. No such objection was made during the post-trial conference.

On July 17, 2003, the trial court entered a final decree of divorce. A permanent parenting plan ("the Plan") was filed contemporaneously with the final decree to provide for the parenting and support of Jacob and Hollie. The final decree contained the no contact order discussed by the parties at the post-trial conference, providing that Father was enjoined from having any contact whatsoever

with Mother. The Plan included the requirement that Father undergo a psychological evaluation at Father's expense within eight months of the filing of the Plan, and provided that the "evaluation should include a recommended course of treatment for any issues raised by such evaluation." The Plan further provided that, "[b]y consent of the parties announced in open Court, the Guardian ad Litem shall continue to serve as the binding arbitrator on all parenting schedules for Father's parenting time only," and that the expenses of the Guardian would be determined by the Guardian at her discretion. The final decree provided that "[e]ach party shall pay ½ of the total bill ($2,362.50) generated by the Guardian ad Litem. Judgment is entered against each party for ½ of same, which shall be paid as and for child support by each party to the Guardian." Father now appeals the final decree.

On October 23, 2003, Father filed a "Notice of Filing of Transcript" with a transcript of the July 9, 2003 post-trial conference. Mother objected to the filing of that transcript, arguing that the transcript of the post-trial conference did not constitute the evidentiary record, but merely related to argument on the wording of the order resulting from the June 3, 2003 trial. On December 12, 2003, Father filed a "Notice That No Statement of Evidence Will Be Filed," conceding that the transcript filed was not a transcript of the trial, but nevertheless designating it to be included in the appellate record.

On appeal, Father argues that the trial court erred in (1) ordering Father to undergo a psychological evaluation; (2) requiring that the Guardian be the "binding arbitrator" regarding Father's visitation; and (3) ordering the parties to pay the Guardian's fees as child support, rather than costs. Mother notes that Father, through his trial counsel, either consented to or failed to object to the trial court's decisions on all of these issues. In addition, Mother argues, the facts contained in the record on appeal are sufficient to uphold the trial court's decisions.

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct, unless the preponderance of the evidence is otherwise. ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d). Nevertheless, decisions involving matters of child custody are "factually driven and require the careful consideration of numerous factors." ***Adelsperger v. Adelsperger***, 970 S.W.2d 482, 485 (Tenn. Ct. App.1997) (citations omitted). Because trial courts have the benefit of observing the demeanor of the witnesses, they are given wide discretion in determining such matters. ***Mayberry v. Mayberry***, No. M2002-00424-COA-R3-CV, 2003 WL 21392193, at *2 (Tenn. Ct. App. June 17, 2003). Questions of law are reviewed *de novo*, with no presumption of correctness. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

Father first challenges the trial court's decision to require him to undergo a psychological evaluation, at his own cost, within eight months of the entry of the Plan in order to continue visitation with the parties' children. Father claims that this requirement did not conform with the provisions of Rule 35 of the Tennessee Rules of Civil Procedure, which sets out the trial court's

authority to order a psychological evaluation.[3]  From a review of the record on appeal, which does not include a transcript of the trial, the proposed parenting plan submitted by Father admitted that his visitation needed to be restricted because of the "absence of or substantial impairment of emotional ties between the children and parent."  Mother's proposed parenting plan requested that Father's visitation be restricted for the additional reasons that Father had engaged in physical or emotional abuse of the children, that he neglected his parenting functions, and that Father's abusive use of conflict created a danger to the children.  At some point in the proceedings, the trial court decided to permit Father to have supervised visitation with the children for a period of time, but found it necessary to require Father to undergo a psychological evaluation in order to obtain a recommendation regarding future visitation.

Because the appellate record contains no trial transcript and no statement of the evidence, the basis for the trial court's decision is not apparent.  There is also no indication that Father made any objection to the trial court's requirement of a psychological evaluation on the basis that the conditions of Rule 35 had not been met, or, for that matter, on any basis whatsoever.[4]  At the post-trial conference, in the trial court's discussion of this issue with the Guardian, Father's counsel did not raise any concerns or make any objections to the requirement that Father undergo an evaluation.

"Tennessee courts have long recognized that, in order to preserve an issue on appeal, an objection must be made in a timely manner before the trial court."  ***Eldridge v. Eldridge***, No. 01A01-9808-CV-00451, 1999 WL 767792, at *3 (Tenn. Ct. App. Sept. 29, 1999).  In ***Eldridge***, the trial court entered a final decree of divorce, and the husband filed a motion for reconsideration on the basis that he was not given the opportunity to present evidence on the matters resolved in the decree.  The trial court denied the motion for reconsideration.  ***Id.***  The husband appealed, raising the same argument on appeal as he had made in his motion for reconsideration.  The appellate court held that the husband was not entitled to maintain the argument on appeal, because he had waived it by failing to make a timely objection in the trial court.  The ***Eldridge*** court explained:

> It is a general rule of trial practice that a party is not permitted to withhold objection to an occurrence during the trial, saving the objection as an 'ace in the hole' to be used in event of an unfavorable outcome.  Rather, parties are required to make timely

---

[3]Rule 35 provides:

> **Order for Examination.**  When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control.  The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Tenn. R. Civ. P. 35.01.

[4]There is no written objection in the technical record on appeal.

objection or motion to remedy an error to enable the correction of the error and the avoidance of the expense of a new trial, and a failure to make such timely objection or motion is considered a waiver.

*Id.* The trial court opined that the "[h]usband may not refrain from objecting until he determines whether he will receive a desirable outcome." *Id.* Therefore, the husband was precluded from making his argument on appeal based on waiver. *Id.*

In the instant case, the record contains no indication that Father made any objection at trial to the requirement that he undergo a psychological evaluation, and Father admits on appeal that no such objection was made. The transcript of the post-trial conference makes it clear that Father's counsel made no objection to the challenged requirement at the post-trial conference. Therefore, on this record, Father made no objection to the decision about which he now complains. Under these circumstances, the issue is waived on appeal. *See id.*

Father next argues that the trial court erred in appointing the Guardian as the "binding arbitrator" regarding his visitation schedule. He claims that this provision constitutes an "unlawful delegation of judicial authority to the guardian ad litem" and places an "unduly burdensome financial obligation on Husband in order for him to seek relief." *See Whitaker v. Whitaker*, 957 S.W.2d 834, 838-39 (Tenn. Ct. App. 1997). This argument, however, suffers from the same infirmity as the first, in that Father made no objection in the trial court to the inclusion of this provision in the final Plan. In fact, the Plan specifically states that this provision was included "[b]y consent of the parties announced in open Court . . . ." On appeal, Father concedes that he made no objection regarding this issue. There being no objection raised in the trial court, the argument must now be deemed waived on appeal.

Father argues that the Guardian's fees should not have been assessed as child support, but contends instead that they should have been assessed as costs. He maintains that the trial court's authority to award child support is statutory, and that such awards must be for the benefit of the children, not the attorneys or the guardian. Again, there is no record that Father made such an argument in the trial court. Mother notes that the parties agreed to the designation of the fees as child support in the original consent order appointing the Guardian. Thus, the argument is deemed to be waived.

Father asserts on appeal that he should not be bound by the stipulations and agreements made on his behalf by his trial counsel, because his trial counsel was ineffective and made some decisions without Father's knowledge or consent. He argues that, while effective assistance of counsel in a civil action is generally not guaranteed, relief may be granted in cases "where the facts are so egregious that justice may require some relief." *See Thornburgh v. Thornburgh*, 937 S.W.2d 925, 926 (Tenn. Ct. App. 1996). In this case, the facts are not sufficiently egregious to warrant such relief. Therefore, this argument must be rejected as well.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Vernon Barker, and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE