**Richard Pallmer JAHN, Jr., Plaintiff–Appellee,**

v.

**Sheryl June JAHN, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

May 24, 1996.

Application for Permission to Appeal Denied by Supreme Court Oct. 21, 1996.

band), a divorce; granted him custody of the parties' two minor children, Madison Anne Jahn (DOB: March 12, 1986) and Hayden Erich Jahn (DOB: July 22, 1987); established the visitation rights of Sheryl June Jahn (Wife); ordered Wife to pay Husband child support in the amount of $1,892 per month; appointed the parties co-trustees of the children's pre-existing educational fund; and divided the parties' property. Wife appeals, arguing that the evidence preponderates against the trial court's custody and visitation decrees and that the court erred in failing to treat Husband's interest in the assets of his law partnership as a marital asset. Husband also raises issues.[1] He contends that the trial court should have imposed a child support obligation on Wife for the period from the parties' separation to the date of the final hearing; that the trial court erred in requiring Husband to deposit a portion of his child support into the children's educational fund; that the court erred in appointing the parties co-trustees of the fund; and that the court erred in failing to equitably divide the marital assets.

In this non-jury case, our review is *de novo;* however, the record comes to us accompanied by a presumption of correctness of the trial court's factually-driven determinations. We must affirm those determinations unless the evidence preponderates against them. Rule 13(d), T.R.A.P. No such presumption attaches to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

William C. Killian, Jasper, for plaintiff-appellee.

J.W. Dietzen of Dietzen & Atchley, Chattanooga, for defendant-appellant.

*OPINION*

SUSANO, Judge.

This is a divorce case. The trial court awarded Richard Pallmer Jahn, Jr. (Hus-

### I.  *Custody and Visitation Issues*

Our *de novo* review of the trial court's custody and visitation decrees is tempered by the well-established principle that a trial court has wide discretion in matters of custody and visitation. *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn.1988); *Marmino v. Marmino,* 34 Tenn.App. 352, 238 S.W.2d 105, 107 (1950); *Grant v. Grant,* 39 Tenn.App. 539, 286 S.W.2d 349, 350 (1954). The various general principles regarding a trial court's

---

**1.** The appellant argues that we cannot consider the appellee's issues because he did not file a notice of appeal. The appellant's position is in-correct. Once a case is properly appealed by one party, the other party or parties are at liberty to raise issues. *See* Rule 13(a), T.R.A.P.

prerogatives in these matters and our review of same is well stated in *Suttles:*

> Although we recognize that the general rule is that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge," *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn.App.1973), and that the trial court's decision will not ordinarily be reversed absent some abuse of that discretion, "in reviewing child custody and visitation cases, we must remember that the welfare of the child has always been the paramount consideration" for the courts. *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn.1983). In addition, the right of the noncustodial parent to reasonable visitation is clearly favored. *E.g., Weaver v. Weaver,* 37 Tenn. App. 195, 202–203, 261 S.W.2d 145, 148 (1953).

748 S.W.2d at 429.

■ The trial judge found that "both parents [were] suitable to have custody of [their] children"; however, he concluded that "[j]oint custody would not be in the best interest of the children," citing our decision in *Dodd v. Dodd,* 737 S.W.2d 286, 289–90 (Tenn.App.1987). He awarded sole custody to Husband based upon an analysis of the parties' comparative fitness to be custodians of their minor children. He determined that the evidence tended to favor Husband because of a greater availability of third party support; more positive "associations and influences to which the children are . . . likely to be exposed . . . with . . . Husband"; and Mr. Jahn's consistency and stability. Our *de novo* review of the record does not persuade us that the evidence preponderates against these findings. There is substantial evidence that Husband has been and will likely continue to be a fit and proper custodian of these two children. On balance, the proof favors Husband over Wife on this issue.

The trial court found, and we agree, that the facts militate against a joint custody arrangement. The feelings between the parties were such as to demonstrate an absence of the cooperative spirit that is so essential to a workable joint custody arrangement. *Dodd,* 737 S.W.2d at 290. Even at that, the court did decree that Wife should continue to be actively involved in the children's lives:

> Husband must consult with wife, before making any major decisions regarding the children's education, medical treatment, religious training, and extracurricular activities.

> Wife shall have equal access to the children's grades and school teachers and shall be kept generally advised by the husband of material matters relating to the children's health, education, religious training, sports and extracurricular activities.

The evidence does not preponderate against any of the court's decrees with respect to the issue of custody.

In the alternative, Wife argues that the court should have awarded her more visitation time with her children. She argues that she had more time with them under her informal understanding with Husband following the parties' separation.

■ The issue of visitation addressed the sound discretion of the trial judge. *Suttles,* 748 S.W.2d at 429. He responded by awarding Wife substantial time with her children: every other weekend; Wednesday afternoons; two weeks in the summer; every other Easter, Memorial Day, July 4th, Labor Day, and Thanksgiving; half of the school system's Christmas vacation; every other spring vacation; Mother's Day; Wife's birthday and a part of each child's birthday; alternate Halloweens; and every other school fall break. While not in the court's decree, the trial court expressed its intent that Wife have substantial visitation with the children: "I want her, anytime she's free, to be with her children." The evidence does not preponderate against the trial court's decree with respect to visitation. We find no abuse of the trial court's discretion.

## II. *Child Support and Related Issues*

The trial court ordered Wife to pay Husband child support of $1,892 per month. This award was based upon the court's finding that Wife was capable of earning a gross monthly income of $8,500. Husband argues that these payments should have been made

retroactive to January, 1994.[2] The court below opted to make these payments and Wife's obligation to pay half of the children's medical insurance prospective only from May 1, 1995.

■ We do not find any error in the trial court's decision. Husband filed a motion for temporary child support on May 10, 1994. An agreed order was entered on May 27, 1994, directing Wife to pay Husband child support *pendente lite* of $1,000 per month. That order was in place until the final judgment was entered. The parties agreed that $1,000 was the appropriate amount of child support *pendente lite*. The trial court approved this agreement and the order provided that these payments would "continu[e] until further order of [the] court." Under the circumstances of this case, it was not inappropriate to make Wife's child support obligations in the final judgment prospective in nature only.

■ Husband next argues that the court erred when it ordered him to pay $600 of "[wife's] support [payment of $1,892] ... into the educational trust fund for the children." We believe the answer to this issue can be found in the Child Support Guidelines (Guidelines) promulgated by the Tennessee Department of Human Services pursuant to the provisions of T.C.A. § 36–5–101(e)(2). These Guidelines have the force of law. *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993). A trial court has the authority to deviate from the Guidelines but only if an appropriate reason for doing so is expressly stated on the record. T.C.A. § 36–5–101(e)(1).

■ Tenn.Comp.R. & Regs., ch. 1240–2–4–.04(3) provides as follows:

> The court must order child support based upon the appropriate percentage of all net income of the obligor as defined according to 1240–2–4–.03 of this rule but alternative payment arrangements may be made for the award from that portion of net income which exceeds $6,250. When the net income of the obligor exceeds $6,250 per month, the court may establish educational or other trust funds for the benefit of the

child(ren) or make other provisions in the child(ren)'s best interest; however, *all of the support award amount based on net income up through $6,250 must be paid to the custodial parent.*

(Emphasis added). The trial court determined that Wife was capable of earning a monthly gross income of $8,500 which translates into a "forced" net income of $5,911.05. It correctly set her child support obligation pursuant to the Guidelines at $1,892 per month. Husband, as the custodian of the children, is entitled to the full amount of the mandated support. Since there was no express finding by the trial court stating that it was deviating from the Guidelines, and why, it was not appropriate for the court to order Husband to set aside a portion of the monthly child support for the children's educational fund. A court's "set aside" authority begins at a net income of $6,250. Accordingly, the trial court's judgment is modified to delete the following provision:

> Six hundred dollars ($600.00) per month of this support shall be paid by the husband into the educational trust fund for the children.

Prior to their separation, the parties established the educational fund for the children. At the time of the divorce, the fund contained in excess of $25,000 for each child. The trial court addressed this fund as follows:

> Both parties shall serve as trustees of the children's educational fund and both signatures are required to disburse these funds. The income tax as a result of earnings of the funds will be paid by the Husband, with the Wife to reimburse him for half of such tax. To the extent that any tax deduction exists for contributions to the fund, the party making the donation to the fund shall receive the corresponding tax advantage. If any tax deduction exists for the funds presently in the accounts, the tax deduction will be divided by the parties.
>
> The education fund may be used for college or high school tuition (9th grade and up). However, if it is decided to place the children in a private or parochial school other than Lutheran School after 6th

---

**2.** Husband filed for divorce on December 6, 1993.

grade, the fund may be used for these tuition costs. The parties may also enter into a more detailed agreement along the lines of *Acosta v. Acosta,* 19 TAM 35–9 (Tenn.App.1994) as to contributions, use, and disposition of the trust funds if any remain after the children's education is completed.

Husband complains that he should have been the sole trustee of these funds. We disagree.

■ Wife made substantial contributions to the fund out of her earnings as a Certified Registered Nurse Anesthetist. In some years, her income exceeded that of Husband's. In fact, most of the money in the fund had been contributed by Wife. We find no error in establishing the parties as co-trustees of the fund. Husband's issue on this point is found to be without merit.

### III. *Division of Property Issues*

Husband argues that Wife received a disproportionate share of the marital assets. Wife contends that the trial court should have considered Husband's interest in the assets of his law firm as a marital asset. We will consider these two issues together.

A resolution of these property issues is hampered by the failure of the trial court to make specific findings as to the identity and value of the marital assets and obligations. For example, it is not clear from the record whether the court found that Husband's interest in the law firm assets was a separate property interest or a marital asset. What is clear is that he awarded that interest entirely to Husband.

■ Husband's interest in the assets of his law practice is a marital asset. These assets—accounts receivable and other assets—were created or acquired after the parties' marriage on March 29, 1985. There is no proof in the record that these particular accounts receivable were in existence in 1985. There is no reason to believe they were; if

they were that old, Husband would not have claimed that they are now collectible. Since these accounts and the other assets were created or acquired during the marriage, they are marital assets. *See* T.C.A. § 36–4–121(b)(1)(A).

■ According to the testimony, Husband's interest in the assets of the law firm is properly valued at $180,065. If this asset is assigned totally to Husband—as it was by the trial court—an inequitable division of marital property results. This is true because of the substantial contributions made by Wife as wage earner, wife, and mother.

■ We cannot ascertain the true value of many of the marital assets from the record before us. Thus, we find it appropriate to remand this case to the trial court for the purpose of (a) identifying the marital assets of the parties; (b) establishing the value of those assets [3]; and (c) equitably dividing same between the parties. In making this determination, the trial court is directed to consider the full value of the law firm interest—$180,065—as a marital asset.

■ We have considered Husband's argument that we should consider the value of his interest in the law firm assets at the time of the marriage and allow him to offset that against the value at the time of the divorce. We decline to do so. The law firm assets in existence at the time of marriage [4] are no longer owned by Husband's firm. The accounts receivable have been collected or are no longer collectible. The fixed assets have apparently long since been discarded. The "bottom line" is that the assets *now* in existence were acquired during the marriage. They are marital assets.

The appellant's motion to consider post-judgment facts is denied. The facts that we are asked to consider do not fall within the type of facts contemplated by Rule 14, T.R.A.P.

---

**3.** Some of the assets are partially separate property and partially marital property. The trial court on the remand should separate these interests out before equitably dividing the marital asset component.

**4.** To the extent Husband contributed the proceeds from the liquidation of these assets to the marriage, his interest at the time of the marriage can be considered as a "contribution" by him when the court makes an equitable division of the now-existing marital estate. *See* T.C.A. § 36–4–121(c)(5).

The judgment of the trial court is modified to delete the requirement that appellee put a portion of the child support received from appellant in the children's educational fund. The portion of the judgment addressing the division of the parties' property is vacated and that matter is remanded with instructions as set forth in this opinion. The remainder of the judgment is affirmed. Costs on appeal are taxed half to each party.

GODDARD, P.J., and McMURRAY, J., concur.