IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2004 Session

## JEFFREY SCOTT WEST v. SHARON ANN WEST

**Appeal from the Circuit Court for Hamilton County**
**No. 02D268     Samuel H. Payne, Judge**

_____

**No. E2004-00422-COA-R3-CV  - FILED NOVEMBER 30, 2004**

_____

Jeffrey Scott West ("Father") filed a petition against his former wife, Sharon Ann West ("Mother"), seeking to modify the parties' Permanent Parenting Plan, which plan had not required Mother to pay child support due to the fact she was unemployed.  The trial court, finding that, since the entry of the parenting plan, Mother had had a two-year gross income of over $25,000, held that there had been a substantial and material change in circumstances justifying an order requiring that Mother pay child support of $290 per month.  Mother appeals, arguing that the trial court erred in ordering her to pay child support and in the methodology used by the court in calculating child support.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and WILLIAM H. INMAN, SR.J., joined.

Morgan G. Adams, Chattanooga, Tennessee, for the appellant, Sharon Ann West.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Jeffrey Scott West.

**OPINION**

I.

The parties were married on December 23, 1986.  Two children were born to their union: Bradley Scott West (DOB: August 13, 1988) and Rebecca Ann West (DOB: April 1, 1994).  On May 1, 2002, the trial court awarded the parties a divorce on the ground of irreconcilable differences.  The court approved the parties' Marital Dissolution Agreement and their parenting plan, which plan designated Father as the primary residential parent of both children.  The plan addressed Mother's child support obligation as follows:

Mother is currently unemployed and has been unemployed for a sufficient period of time that she is not presently employable; therefore, circumstances exist that justify a downward deviation in her child support obligation as provided by the Tennessee child support guidelines. Therefore, Mother will not have a child support payment obligation to Father until there has been a substantial and material change in the parties' circumstances. If and when a child support obligation shall be imposed, the parties acknowledge that no action by the parties will be effective to reduce child support after the due date of each payment, and that court approval must be obtained before child support can be reduced.

Thereafter, Mother relocated to Maryland and moved in with her mother, Judith Flanagan.

On May 16, 2003, Father filed a petition to modify the parenting plan, alleging the following:

Pursuant to the Permanent Parenting Plan, as [Mother] was unemployed and had been unemployed for a sufficient period of time such that [Mother] was deemed to be not presently employable, [Mother] was not required at that time to contribute financially toward the support for the parties' children.

There has been a material change in circumstances in that [Mother] returned to the labor force following the entry of the final judgment of divorce and is either currently employed or is currently employable with the concurrent ability to make a child support contribution.

(Numbering in original omitted). In addition, Father asked the court to determine the fair market value of the parties' former marital residence – where Father and the children had resided since the divorce – for the purpose of establishing the amount of Mother's equity interest in the residence. Father further requested that the court then require Mother to transfer her interest in the house to Father, in exchange for his payment of her equity interest.

The parties subsequently stipulated the value of the house, setting Mother's equity interest at $13,413.49. They agreed that Father would pay this amount and that it would be placed in escrow and held at interest. The parties' agreement was memorialized by an order entered October 3, 2003, in which the court decreed that, upon payment of the aforementioned amount into escrow, Mother would execute and deliver to Father a quit claim deed of her interest in the property. The trial court further ordered that the equity interest would be held in escrow until the issue of child support was resolved.

On January 13, 2004, the trial court held a hearing on Father's petition to modify, receiving testimony from both Mother and Father. Mother testified that, for a period of about two and a half

months in 2002, she was employed as a mail clerk at a military base in Maryland. Mother stated that she drove herself to work each day in her 2001 Cadillac DeVille, for which Father was still making the car payments. While Mother was employed at the military base, she earned $2,712. Father introduced copies of Mother's bank records, along with a summary of deposits into Mother's checking and savings accounts, showing total deposits of $25,088.39 for a 21-month period in the years 2002 and 2003. Mother claimed that many of these deposits were loans from her mother, including a $5,000 check on which her mother had indicated in the notation portion of the check that it was a "gift."

In addition, the trial court received into evidence the deposition testimony of Mother's psychiatrist, Dr. Denis T. Kennedy. Dr. Kennedy, who practices in Chattanooga, first saw Mother as a patient in June, 2001, at which time he found that she had symptoms of depression. Dr. Kennedy continued to treat Mother over the course of the next seven months and prescribed various antidepressant and antipsychotic medications for Mother. Mother's final visit to see Dr. Kennedy before moving to Maryland was in January, 2002, at which time the doctor noted that Mother was doing "fairly well," although she was still exhibiting some signs of depression. Dr. Kennedy did not see Mother again until November 17, 2003. At that appointment, Dr. Kennedy diagnosed Mother as having "[m]ajor depressive disorder with psychotic features," and opined that Mother "was not fit for any gainful employment and that she's unlikely to become fit within the foreseeable future." However, on cross examination, Dr. Kennedy admitted that he could not say that Mother would never be able to work again; he just found it unlikely "that she'll be able to hold a job in the foreseeable future."

At the conclusion of the hearing, the trial court found that Mother had received, "[f]rom whatever source," a total income of $25,088.39 over the course of two years. Based upon that figure, the court found that Mother should be required to pay $290 per month in child support. The trial court further found that the money held in escrow, which, at the time of the hearing, amounted to $13,421.14, should be paid into the office of the circuit court clerk, who would then disburse $290 per month to Father. Monthly payments would continue at this level, the court ruled, until the funds had been exhausted or until there was another change in circumstances. These findings were memorialized in an order entered January 29, 2004.

From this order, Mother appeals.

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. **Jahn v. Jahn**, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

## III.

Mother raises three issues for our review:

> 1. Was there a material change in circumstances in Mother's 100% disabling condition, justifying a change in the award of child support?
>
> 2. Can a 100% disabled person be ordered to pay child support from her share of the marital property?
>
> 3. Did the trial court err in its calculation of child support?

We will address each of these issues in turn.

## IV.

## A.

Mother first argues that Father failed to prove a material change in circumstances in her "100% disabling" condition, justifying a change in child support. We think this issue is better stated as follows: whether the trial court was justified in ordering an increase in Mother's child support obligation. We hold that it was so justified.

Tenn. Code Ann. § 36-5-101(a)(1)(A) (Supp. 2004) provides that, upon the application of either party, the court will order an increase or decrease in child support payments "when there is found to be a significant variance . . . between the guidelines and the amount of support currently ordered." *Id.* The statute further provides that the court does not have to order such an increase or decrease if "the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed." *Id.* The guidelines define this "significant variance" as being "at least 15%" if the current support award is equal to or greater than $100 per month, and "at least fifteen dollars ($15.00)" if the current support award is less than $100 per month. Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (2003). Mother's previous child support set at the time of the divorce, *i.e.*, *zero*, is obviously less than $100 per month. Hence, the second scenario set forth above is the criteria applicable to the instant case.

The parenting plan entered into by the parties at the time of their divorce provides that Mother had no child support obligation. The plan states that this downward deviation from the guidelines was based upon the fact that Mother was, at that time, unemployed, and that she "has been unemployed for a sufficient period of time that she is not presently employable." When Father filed his petition to modify one year later, Mother had been employed in Maryland for two and a half months, earning a total of $2,712. In fact, the trial court found that, including Mother's income from her employment, Mother had a total two-year income of $25,088.39, "from whatever source."

Child support is based, not only upon earnings from employment, but on all types of income as that concept is defined in the guidelines:

> Gross income shall include all income from any source (before taxes and other deductions), *whether earned or unearned*, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, *gifts*, prizes, lottery winnings, *alimony* or maintenance, and income from self-employment.

1240-2-4-.03(3)(a)(1) (emphasis added).

Clearly, the circumstances justifying the original downward deviation in child support had changed, as Mother went from no income to income, as the trial court found, in excess of $25,000 over a two-year period. Hence, a "significant variance" had occurred, as Mother went from no income to income, on the average, of almost $1,200 per month. *See* 1240-2-4-.02(3). Accordingly, we find that the evidence does not preponderate against the trial court's factual findings underpinning its decision to order Mother to pay child support.

B.

Mother next asserts that the trial court erred in requiring "a 100% disabled person" to pay child support from her share of the marital property. We find no error in the trial court's judgment.

The determinative factor in deciding whether to order a party to pay child support is not whether that party can obtain or maintain employment; rather, the issue is whether the party has "income." As we have previously stated, "income" encompasses a variety of things, not just earnings from employment. *See* 1240-2-4-.03(3)(a)(1). Even assuming, without deciding, that Mother is completely disabled, the trial court found Mother had income from "whatever source," and the evidence before us does not preponderate against that finding.

C.

Finally, Mother contends that the trial court erred in the methodology it employed when it calculated child support. Specifically, Mother asserts that the trial court, in arriving at the $25,088.39 two-year income figure, erroneously counted transfers between Mother's checking and savings accounts, resulting in the court double counting certain deposits. In addition, Mother argues that the trial court should not have included Mother's alimony payments in calculating her income, nor should the trial court have included Mother's receipt of 35% of Father's profit sharing plan.

With respect to Mother's contention that the trial court counted certain deposits to Mother's bank accounts twice, resulting in an inflated income figure, we find no evidence that Mother ever brought this alleged error to the attention of the trial court. We are not required to grant any relief to a party "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Likewise, we find no evidence that Mother, at the trial court level, ever addressed the issue of her receipt of a percentage of Father's profit sharing plan or, more specifically, that she called to the court's attention that the profit sharing money went into her accounts[1]. Because Mother failed to do what was necessary to call these alleged errors to the trial court's attention, we decline to address these issues.

Furthermore, with respect to Mother's assertion that her alimony payments should not have been included in the calculation of income, we direct her attention to the child support guidelines, which, as we have previously indicated, consider alimony a form of gross income. *See* 1240-2-4-.03(3)(a)(1). Accordingly, we find no error in the trial court's inclusion of alimony in its income calculation.

V.

The judgment of the circuit court is affirmed. This case is remanded to the trial court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Sharon Ann West.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[1]There is absolutely nothing in the record before us showing that this distribution went into one of Mother's accounts.