IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2004 Session

## LISA KAREN STOWERS SMITH v. MARK EDWARD SMITH

**Appeal from the Chancery Court for Bradley County**
**No. 92-526     Jerri S. Bryant, Chancellor**

———————————

**No. E2003-02642-COA-R3-CV  - FILED DECEMBER 22, 2004**

———————————

Lisa Karen Stowers Hoffer, formerly Smith ("Mother"), filed a petition against her former husband, Mark Edward Smith ("Father"), seeking to modify the provisions of the parties' judgment of divorce, which judgment required Father to pay $1,200 per month in child support. The trial court, finding that, in the most recent three years, Father had had an average annual income of $117,238, held that there had been a substantial and material change in circumstances justifying an order requiring Father to pay child support of $2,803 per month. Father appeals, arguing that the trial court erred in its calculation of his income. We affirm in part and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Roger E. Jenne, Cleveland, Tennessee, for the appellant, Mark Edward Smith.

B. Prince Miller, Jr., Cleveland, Tennessee, for the appellee, Lisa Karen Stowers Hoffer, formerly Smith.

**OPINION**

I.

Three children were born to the parties' marriage: Melissa Smith (DOB: October 10, 1985), Caroline Smith (DOB: September 12, 1988), and Stefanie Smith (DOB: July 17, 1990). On June 24, 1993, the trial court awarded the parties a divorce. Under the terms of the divorce judgment, Mother was designated as the primary residential parent of all three children, and Father was ordered to pay child support of $1,200 per month.

On February 26, 2001, Mother filed a petition to modify the judgment of divorce, alleging that a substantial and material change in circumstances had occurred since the entry of the divorce judgment, a change which would require an increase in Father's child support obligation. Eleven months later, Father answered Mother's petition, acknowledging an increase in his income; he voluntarily increased his child support payment to $1,540 per month, retroactive to the filing of Mother's petition.

On July 17, 2003, the trial court held a hearing on Mother's petition. It received testimony from Mother and Father, as well as Mother's husband, Jerry Hoffer ("Stepfather"), and Father's father, Henry Smith ("Mr. Smith"). Stepfather testified that he had obtained copies of the records of Father's bank accounts for the years 1999 through 2003, and that he had calculated the total amount of deposits to those accounts in each year. Stepfather's calculations showed total deposits of $111,240 in the year 2000; $144,267 in the year 2001; and $172,632 in the year 2002.

Father testified that his real income was evidenced by his income tax returns, which were introduced into evidence. His returns showed income of $69,251 in the year 2000; $71,356 in 2001; and $63,724 in 2002. In addition, the returns showed a ROTH IRA rollover distribution of $15,209 in 2000 and $15,211 in 2001. Father testified that the substantial difference between the deposits to his bank accounts and the income reflected on his income tax returns was due to several factors. First, Father claimed that he received loans from his father, Mr. Smith, each year, which should not have been counted as income. Specifically, Father testified that he received a loan of $19,200 from Mr. Smith in the year 2002. In addition, Father stated that he had been reimbursed for numerous business expenses each year, which accounted for several deposits, but, according to him, should not be considered as income. Father testified that, in 2002, he had been reimbursed for $43,000 in expenses; however, Father offered no documentation to verify this contention. Father also testified that some of the deposits reflected on his bank statements were actually transfers of funds between accounts, and that, as a result, these deposits were erroneously counted twice. However, Father offered no evidence as to which deposits were the result of such transfers. When questioned about his automobile, Father admitted that he had been provided a company car, which the company leased for $950 per month.

Mr. Smith testified last and introduced copies of promissory notes signed by Father each year. The notes reflected that Father had borrowed the following amounts from him: $22,378 in 2000; $25,436 in 2001; and $34,600 in 2002.

At the conclusion of the hearing, the trial court found the facts as follows:

> At the time of the parties' original divorce, [Mother] was awarded twelve hundred dollars per month for three children. Since that time, I think it's clear that [Father's] income has increased such that there is a substantial variance, and child support should be increased.

The question is what is his income. It is – I think, in this case, [Mother] has proven that moneys [sic] went into various accounts held by [Father]. Even if I take his business deductions as being true for 2002, as well as the loans by [Mr. Smith] to be true and adequate [sic], and deduct those off of the gross amount that went into that account, [Father] has come forward with no other proof as to where the rest of those funds have come from.

So I'm setting his income for [2002] at [$97,832]. Using that same formula for 2001, I set his income at [$130,231]. For 2000, at [$90,262].

I averaged those three years together and set child support at [$2,536] per month. That includes an [$11,400 per year] income imputation to him for his car.

These findings were memorialized in an order entered August 7, 2003. Upon Father's motion to alter or amend the judgment, the trial court entered the following order on October 16, 2003:

[Father's] Rule 59 Motion requesting relief on the basis that the Court erred in including the lease payment on the vehicle as income is overruled. Under the Tennessee Child Support Guidelines Regulations 1240-2-4-.03(3), gross income includes "in kind" remuneration to be imputed as income, i.e. fringe benefits such as a company car, etc. Therefore, this was properly included as income.

With respect to the other issues raised, [Mother] produced records from seven (7) bank accounts out of which [Father] wrote checks for various years. The amounts deposited into his accounts each year were $111,240.00 (2000); $144,267.00 (2001); and $172,632 (2002).

The Court then deducted the loans received by [Father] as corroborated by [Mr. Smith]. The Court added to that income $11,400.00 for the value of the company car and insurance paid by the company. The total gross income for 2000 was $90,262 and for 2001 was $130,231.00. The Court further allowed a deduction in the amount of $15,211.00 for an IRA that was cashed and placed into the account which made [Father's] gross income for 2001 the amount of $115,020.00.

Income for 2002 was somewhat more difficult. There were gross amounts deposited into [Father's] account in the amount of $172,632.00. [Father] produced a note through [Mr. Smith] as a

witness to show that he received $34,600.00 from a promissory note. His credibility was questioned on this point when he stated during his own examination he borrowed $19,200.00 from [Mr. Smith]. While [Father] further testified he received $42,000.00 in reimbursements for expenses, he offered no documentation to prove the same. The Court added to the income the amount of $11,400.00 for the value of the car, insurance and gas reimbursed by the company. The Court finds that the income for 2002 was $146,432.00.

After spending extensive time going back through this file and the proof presented in this matter, the Court finds that it did err in setting the amount of child support. The Court finds that the income for 2002 was $146,432.00 making a three year average of $117,238.00. Upon application of the guidelines, the Court sets child support at $2,803.00. . . .

(Numbering in original omitted).

From this order, Father appeals.

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness as to the trial court's findings of fact, one that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

Father raises a single issue for our review: Did the trial court err in calculating Father's income for the purpose of setting child support? In raising this issue, Father contends that the trial court made several errors, which led to an erroneous income calculation for the years under review.

First, Father asserts that the trial court erred in relying on the total amount of deposits to his bank accounts in calculating his income. Instead, Father argues, the trial court should have relied upon Father's income as reflected on his income tax returns and W-2 forms.

The bank documents admitted into evidence by Stepfather – and the summaries thereof – showed the following total deposits to Father's accounts: $111,240 in 2000; $144,267 in 2001; and $172,632 in 2002. By contrast, Father's income tax returns for those years showed an income of $69,251 in 2000; $71,356 in 2001; and $63,724 in 2002. Father points out that Stepfather testified that he had no way of knowing the origin of the deposits or which deposits were true representations

of Father's income. Based upon this testimony, Father contends that such deposits are not an accurate measure of his income. While Father stated that transfers between accounts were counted twice and that he had several thousand dollars in business reimbursements, he offered no proof other than his general assertion to substantiate this position. Instead, Father relied solely upon his income tax returns. This failure of proof was noted by the trial court in its opinion. Without proof that the deposits to Father's accounts were *not* income, we find that the evidence does not preponderate against the trial court's decision to use these deposits as the starting point in calculating Father's income.

Next, Father contends that the trial court erred in imputing $11,400 per year (or $950 per month) as additional income based upon Father's use of a company automobile. We find no error in this. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(3) (2003) clearly provides that "'[i]n kind' remuneration must also be imputed as income, i.e., fringe benefits such as a company car, . . ." Accordingly, the trial court was correct in adding $11,400 per year to Father's deposits to account for his use of this automobile.

Father next asserts that the trial court erred in its treatment of the loans Father received from his father. While the trial court relied upon the loan amounts reflected in the 2000 and 2001 promissory notes in calculating Father's income, which amounts were $22,378 and $25,436 respectively, the trial court pointed out that Father had testified that he had received only $19,200 in loans in 2002, as opposed to the 2002 promissory note, which indicated that Father had received a loan of $34,600. The credibility of witnesses is a matter peculiarly within the province of the trial court. *See **Bowman v. Bowman***, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). Accordingly, such determinations are entitled to great weight on appeal. *See **Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). It is clear that the trial court, in assessing witness credibility, chose to rely on the loan figure testified to by Father – rather than the larger amount testified to by Mr. Smith – in assessing the amount to deduct from Father's 2002 deposits. The evidence does not preponderate against this decision.

With respect to Father's IRA distributions, we find that the trial court correctly deducted $15,211 from Father's 2001 deposits. However, we find that the evidence preponderates against the trial court's finding that Father received no IRA distribution in 2000. Accordingly, we hold that the trial court should have deducted the IRA distribution of $15,209 from Father's 2000 deposits.

Having determined the proper additions to and deductions from Father's deposits, we must now determine whether the income calculations reached by the trial court were correct. For the year 2000, Father's deposits were $111,240. To this amount, we must add $11,400 for the value of the leased automobile, and deduct $22,378 for the loan from Mr. Smith and $15,209 for the IRA distribution. This leaves us with a total income of $85,053. We find that this was the proper measure of Father's income in 2000, rather than the $90,262 found by the trial court.

In 2001, Father's deposits totaled $144,267. After adding $11,400 for the automobile and deducting $25,436 for the loan and $15,211 for the IRA, Father's income was $115,020. This is the amount found by the trial court.

Finally, in 2002, Father's deposits equaled $172,632. After adding $11,400 for the automobile and deducting $19,200 for the loan, Father's income was $164,832. We find that the trial court erred in finding Father's 2002 income to be $146,432.

Therefore, Father's income should be as follows: $85,053 in 2000; $115,020 in 2001; and $164,832 in 2002. These new amounts require that we vacate the trial court's judgment and remand this case to the trial court to determine the appropriate level of child support after calculating net income pursuant to Tenn. Comp. R. & Regs. 1240-2-4-.03(4).

## IV.

Mother seeks her attorney fees incurred on this appeal. Exercising our discretion, we find that attorney's fees on appeal are not warranted in this case and decline to make such an award.

## V.

The judgment of the trial court is affirmed in part and vacated in part. This case is remanded to the trial court for further proceedings, consistent with this opinion, and for the collection of costs assessed below, all pursuant to applicable law. Exercising our discretion, we tax the costs on appeal one-half to the appellant, Mark Edward Smith, and one-half to the appellee, Lisa Karen Stowers Hoffer.

_____
CHARLES D. SUSANO, JR., JUDGE