IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, October 7, 2005.

**STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
D.M.E. and R.W.E., IN THE MATTER OF: R.W.E., JR., A.E.E. and D.D.E.,
CHILDREN UNDER 18 YEARS OF AGE**

**Direct Appeal from the Juvenile Court for McMinn County
No. 19232        Hon.  James F. Watson, Judge**

**No. E2005-00274-COA-R3-PT  - FILED DECEMBER 12, 2005**

The Trial Court terminated the parental rights of both parents to the three minor children.  On appeal,
we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO,
JR., J., and D. MICHAEL SWINEY, J., joined.

John W. Cleveland, Sweetwater, Tennessee, for appellant, D.M.E.

Charles W. Pope, Jr., Athens, Tennessee, for appellant, R.W.E.

Paul G. Summers, Attorney General and Reporter, and
Amy T. Master, Assistant Attorney General, Nashville, Tennessee, for appellee.

**OPINION**

        In this action, the Juvenile Court terminated the parental rights of D.M.E. and R.W.E.
to their three minor children, R.W.E. Jr., A.E.E. and D.D.E., and both parents have appealed.

        The Department of Children's Services ("Department") petitioned to terminate the
parental rights of the parents on March 25, 2004, at which time the Court found that the children

were dependent and neglected. The children came into custody on December 20, 2002 because the mother had left the children with her mother where three active methamphetamine labs were discovered. The father had just been released from jail.

The parents entered a permanency plan on January 17, 2003. The parents entered a second permanency plan staffed on July 3, 3003, and yet entered a third permanency plan staffed on June 2, 2004.

On December 9, 2004, the Juvenile Judge, following evidentiary hearings, entered Judgment terminating the parental rights of both parents to the three minor children. It his Judgment, the Court recited that the parents had entered into three permanency plans which the Court found to be reasonably related to remedying the conditions and circumstances which necessitated foster care.

The Court, in its Judgment, observed that:

The initial Permanency Plan for . . . [D.M.E.] approved by the Court on 3/18/03 required her to:

1) Cooperate with a drug and alcohol assessment to be set up at Hiawassee Mental Health Center and to submit to random drug screens;
2) Not leave the children with any non-family members under age 21 or anyone under 18 years old;
3) Secure appropriate housing; provide copies of employment checks twice a month to the Case Manager (CM) and advise the CM of any change in employment;
4) Not incur new criminal charges;
5) Pay all fines and fees and obtain driver's license by July 1, 2004;
6) Attend parenting classes (added by the Court).

That the first 2003 Permanency Plan for . . . [R.W.E.] approved by the Court on 3/18/03 required him to;

1) Submit to random drug screens and if they were positive, he would obtain an alcohol and drug assessment and follow all recommendations;
2) Set up a mental health appointment and follow treatment recommendations related to bipolar and/or other disorders;
3) Not leave the children with any non-family members under age 21 or anyone under 18 years old;
4) Secure appropriate housing and provide records of all employment income to CM twice a month;
5) Not incur new criminal charges;
6) Apply for restricted driver's license;
7) the Court added: Complete anger management classes, complete parenting

classes, obtain A&D assessment and follow all recommendations.

The Court reiterated the second and third permanency plans and, after reviewing the evidence, observed:

> The most important requirement of all three Permanency Plans is the successful completion of whatever drug and alcohol treatment is deemed necessary to make them stable, because there is a long history of problems stemming from the substance abuse. . . . Substance abuse is most probably an underlying factor in their lack of stable housing and the employment instability . . . The substance abuse was directly involved in some of [the father's] criminal charges for DUI and public intoxication.
>
> . . .
>
> The Court finds that over the course of two years, neither parent completed any A&D program of any sort, despite having several options offered to them, including in-home counseling. This requirement was the key task on all the Permanency Plans and without compliance on that task there cannot be substantial compliance with the Permanency Plan. Based on the above facts, the Court finds that Respondents have failed to substantially comply with the requirements of the Permanency Plans and grounds for Termination of Parental rights pursuant to T.C.A. § 36-1-113(g)(2) have been proven by clear and convincing evidence.

The Court then considered the petitioners' second ground for termination, i.e., the children had been in custody for six months and that conditions had led to removal still persist and there was little likelihood for the condition to be remedied at an early date. The Court found that by clear and convincing evidence, the children had been in custody for nearly two years, and had actually been out of the custody of the parents for a longer time. The Court further observed that during mentioned two years, the problem of substance abuse had not been addressed by the parents, and their home had not been approved because they would not cooperate with a home study. Neither had driver's licenses and neither party had completed A&D treatment and had refused to admit anyone to their residence for inspection.

The mother argues on appeal that there is no clear and convincing evidence of substantial non-compliance with her permanency plan, and that the State did not put forth reasonable efforts to make it possible for the children to return home.

The father essentially raises the same issues, and stresses that the State made "unreasonably minimal efforts".

This Court's review in a non-jury case is *de novo* with the presumption of correctness of the Trial Court's finding, unless the evidence preponderates against those findings. Tenn. R. App.

P. 13(d). There is no presumption of correctness as to the lower Court's conclusions of law. *Jahn v. Jahn*, 932 S.W.2d 939-941 (Tenn. Ct. App. 1996).

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The right is not absolute and may be terminated if there is clear and convincing evidence justifying termination under a pertinent statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1992). Clear and convincing evidence is evidence which "eliminates any serious substantial doubt concerning the correctness of the conclusions to be drawn from the evidence". *O'Daniel v. Messier*, 905 S.W.2d 182-188 (Tenn. Ct. App. 1995).

Tenn. Code Ann. § 36-1-113(g) lists the grounds when a proven will be a basis for terminating parental rights. *In re: C.W.W.*, 37 S.W.3d 467-473 (Tenn. Ct. App. 2000).

In this case, the record establishes that two of the children were in DCS custody as dependent neglected from 1996 to 1998. Both parents have a history of marital problems, mental health problems, drug use and domestic violence, and have been separated numerous times. The father conceded that he had beaten the mother on numerous occasions, and admitted to several convictions for assault on the mother. At least one assault was witnessed by the children.

The plans required both parents to submit to drug screens, but while the parents submitted to some testing, some of the tests on both parents were positive for drug use.

Due to their drug problems, DCS assigned a certified addiction counselor to the parents through Progressive Case Management, to assess their needs and conduct substance abuse counseling. The evidence establishes they did not keep some of their appointments with the counselor.

DCS also assigned the parents an in-home services case manager from Progressive Case Management to assist and supervise in parental visitation, and assisting the parents with their parenting skills. The plan required the parents to attend parenting classes provided by DCS from March to May 2003, but the parents did not attend. Due to their lack of fulfilling their obligations to the initial parenting plan, a second plan was submitted on July 3, 2003. The plan required both parents to obtain an A&D assessment and follow up with counseling with their Progressive case manager. These parenting classes were held in the evening and concluded in August of 2003. The parents missed some of the sessions, but received their certification in September of 2003. But from July 2003 through June 2004, the mother had eleven positive drug tests and during the same period the father refused several screenings, but had several positive tests. At trial, he admitted to occasionally cheating the tests by submitting false specimens.

A hearing was held on September 30, 2003, for the purpose of approving the second permanency plan, but at that time the father was serving a sentence in the McMinn County Jail for violating his probation for a June 2003 domestic violence offense committed against the mother.

DCS also arranged for professional counseling services and treatment by Valley Psychiatric Facility and Hiawassi, but the record is replete with instances of the parties' failure to attend sessions or follow counseling.

As the trial date approached, the parents behavior did not improve. Between September 15, 2004 and the trial date, the Department had scheduled three visitations for the parents with their children, and they missed all three visits.

The Trial Court found that the requirements of the parenting plan were reasonable, and for the purpose of remedying the conditions necessitating the children's foster care, and while the parents belittle the efforts of DCS, the record demonstrates otherwise. Three permanency plans were formulated and the evidence is clear and convincing that both parents were in substantial non-compliance with the third plan at the time of trial. The parents had several case managers at their disposal, and DCS enlisted outside case managers to aid the parents in overcoming their addictions and behavioral problems. As the cases note, the statute does not require herculean efforts on the part of the DCS, as long as the DCS makes reasonable efforts. *State Dept. Of Childrens' Services v. Malone*, 1998 WL 46461 (Tenn. Ct. App. Eastern Section filed Feb. 5, 1998). We affirm the Trial Court on this issue.

Finally, the Trial Court held that the parental rights of both parents should be terminated because it was in the childrens' best interest. The Trial Court considered the factors set forth in Tenn. Code. Ann. § 36-1-113(c)(2). The Court said that the father and mother had two years in which to change their behavior, but had failed to improve. Also that at the time of trial they had not received drug treatment and the father was not treating his bi-polar disorder, and they had been uncooperative in DCS's efforts to accomplish these goals. Moreover, the children were in a therapeutic foster home which required special attention to their special behavioral and emotional needs. The Trial Court determined that the children had special needs that had not been furnished by the parents, and that the parents had demonstrated that they could not provide safe and stable care and supervision for the children.

We conclude that clear and convincing evidence establishes that it was in the best interest of the children that the parental rights be terminated. Accordingly, the Judgment of the Trial Court is approved and the cost is assessed jointly to the parents.

_____
HERSCHEL PICKENS FRANKS, P.J.