IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 2, 2005

# IN RE CHRISTIAN B., NATHANIEL B., STEPAN B., REANNE B. & DOLTON B.

**Appeal from the Juvenile Court for Cumberland County**
**No. 5806     Steven C. Douglas, Judge**

No. E2005-01439-COA-R3-PT  - FILED JANUARY 20, 2006

The trial court terminated the parental rights of Mary Katherine W.B. ("Mother") and Christopher M.B. ("Father") with respect to their five minor children: Christian B. (DOB: August, 13, 1993), Nathaniel B. (DOB: August 11, 1996), Stepan B. (DOB: April 22, 1998), REanne B.[1] (DOB: March 3, 1999), and Dolton B. (DOB: January 1, 2001).  Mother and Father appeal, arguing that the evidence preponderates against the trial court's findings, stated to be made by clear and convincing evidence, that grounds for termination exist in this case.  We affirm the trial court's judgment terminating the parental rights of the parents but vacate one of the bases upon which the trial court relied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part; Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

G. Earl Patton, Crossville, Tennessee, for the appellants, Mary Katherine W.B. and Christopher M.B.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

Benjamin C. Pearson, Crossville, Tennessee, Guardian ad Litem for Christian B., Nathaniel B., Stepan B., REanne B. and Dolton B.

**OPINION**

---

[1]The spelling of the children's names and the capitalization in REanne's name are as reflected in the record.

I.

Since August, 1999, the Tennessee Department of Children's Services ("DCS") has been involved with Mother and Father, attempting to assist them with ongoing housekeeping issues and hygiene problems pertaining to their minor children. On August 2, 2002, DCS filed a petition for temporary custody of Christian B., Nathaniel B., Stepan B., REanne B., and Dolton B. (collectively "the children"), all of whom are considered, in varying degrees, to be special needs children. The petition alleges that the children are dependent and neglected "in that the children have been subjected to physical and emotional abuse by [Father]." The petition goes on to state that Father has been observed striking one of the children in the head and cursing at the children. The petition further alleges that, despite years of assistance through numerous services, "the housekeeping and hygiene continue to be poor in the home." Upon the filing of the petition, the trial court entered an order placing temporary care and custody of the children with DCS.

On January 27, 2004, DCS filed a petition to terminate the parental rights of Mother and Father, on multiple grounds: abandonment for failure to visit or support; abandonment for failure to establish a suitable home; substantial non-compliance with the permanency plan; and failure to remedy persistent conditions. At trial, counsel for DCS stated that it had decided not to proceed against the parents on the grounds of abandonment for failure to support or failure to visit, noting that "there has been some child support paid, and . . . there has been visitation." At the conclusion of the trial on April 22, 2005, the trial court took the case under advisement. On May 20, 2005, it entered a final order, terminating the parental rights of Mother and Father, finding, by clear and convincing evidence, that grounds for termination existed and, again by clear and convincing evidence, that termination was in the best interest of the children.

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness as to the trial court's findings of fact, a presumption we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

The law is well-settled that "parents have a fundamental right to the care, custody, and control of their children." ***In re Drinnon***, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing ***Stanley v. Illinois***, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). This right, however, is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the applicable statutory scheme. ***Santosky v. Kramer***, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

Tenn. Code Ann. § 36-1-113(g) lists grounds upon which a party's parental rights may be terminated. "[T]he existence of any one of the statutory bases will support a termination of parental rights." *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). The issues raised in the pleadings, and the trial court's findings, cause us to focus on the following statutory provisions:

*Tenn. Code Ann. § 37-1-147 (2005)*

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

* * *

*Tenn. Code Ann. § 36-1-113 (2005)*

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, . . . by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in [Tenn. Code Ann.] § 36-1-102, has occurred;

-3-

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

\* \* \*

*Tenn. Code Ann. § 36-1-102 (2005)*

As used in this part, unless the context otherwise requires:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as

defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

\* \* \*

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child;

\* \* \*

*Tenn. Code Ann. § 37-2-403 (2005)*

(a)(1) Within thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care. . . .

\* \* \*

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency. . . .

\* \* \*

(C) Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, . . . .

IV.

Mother and Father raise three issues for our consideration: (1) whether the evidence supports a finding that Mother and Father abandoned their children; (2) whether the evidence supports a finding that Mother and Father failed to substantially comply with the permanency plan; and (3) whether the evidence supports a finding that Mother and Father failed to remedy persistent conditions. We will address each issue in turn.

A.

With respect to abandonment, the trial court found that Mother and Father had abandoned their children by both failing to visit and by failing to support. In connection with these findings, the court stated the following:

> DCS has proven that at the time of the filing of the Petition [Mother and Father] had failed to support their children for at least four months before the filing. [Father] was serving a jail sentence for assault during this period and for the next five months following the filing of the Petition. At his own request, he did not see the children at all during this time. [Mother] disappeared, reportedly returning to California, for two to three months beginning in August 2003. Her date of return was unclear because she did not notify DCS that she was leaving nor did she notify DCS of her return.
>
> Some support has been paid by [Mother and Father] after the filing of the Petition but post-petition efforts at rehabilitation are not sufficient (TCA 36-1-102(F)). Token support or visitation is not sufficient to rebut abandonment (TCA 36-1-102(1) (B)-(C)). [Father] testified at the trial that his home bills came first before his child support obligations.

(Internal footnotes omitted). We believe this finding is beyond the scope of the issues presented to the court for resolution. Counsel for DCS stated in both opening statement and closing argument that it was no longer pursuing the pleaded grounds of abandonment for failure to visit and failure to support, going so far as to admit that the parties had paid some child support and that they had visited their children. Since DCS specifically and expressly abandoned these grounds, it was error for the trial court to base the termination of the parties' parental rights on them. Accordingly, we vacate the trial court's findings with respect to these two grounds.

The trial court further found that Mother and Father had abandoned their children by failing to establish a suitable home, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(ii). With respect to this ground, the trial court found as follows:

DCS has proven that [Mother and Father] have failed to establish a suitable home. [The DCS case workers] both testified to the dirty, nasty, and unsuitable living conditions at more than one home of [Mother and Father]. [A case worker with a different agency] corroborated this. Photographs entered into the record corroborated these conditions. [Mother and Father] have moved many times during the pendency of these proceedings, often involuntarily due to non-payment of rent or incarceration. [Mother's] residence at Pleasant Hill was acceptable to [DCS] but [Father] was in jail and did not live there nor did the children live there. At other locations, DCS found unrelated persons [living there], alcoholic beverages, illegal drug paraphernalia, and other unsafe or unsanitary conditions.

TCA 36-1-102(1)(A)(ii) provides that after a removal and a finding of dependency and neglect and for a period of four months thereafter that if the parents have failed to make reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the children to such a degree that it appears unlikely that they will be able to provide a suitable home for the children at an early date that this constitutes abandonment. [Mother and Father] have failed to make these reasonable efforts and they have demonstrated the requisite lack of concern. These children were abandoned by their parents after the DCS removal.

There is clear and convincing evidence in the record to support this finding. Without question, DCS took steps to assist Mother and Father in the goal of establishing a suitable home for the children. DCS paid the parents' rent; arranged therapeutic visitation services to assist Mother and Father with their parenting skills; transported Mother to a psychological evaluation; assisted the parents in applying for TennCare and subsidized housing; arranged homemaker services to assist them with hygiene, budgeting, and nutrition; and attempted to schedule counseling appointments for Father. In spite of these efforts, Mother and Father failed to establish a suitable home for the children, living in conditions that, for the most part, could best be described as squalid. The evidence does not preponderate against the trial court's findings of fact underpinning its determination of abandonment under Tenn Code. Ann. § 36-1-102(1)(A)(ii).

B.

The trial court next found, pursuant to Tenn. Code Ann. § 36-1-113(g)(2), that Mother and Father failed to substantially comply with the permanency plan. The permanency plan, dated July 24, 2003, requires Mother and Father to do the following: (1) refrain from using inappropriate discipline and protect the children by preventing anyone else from using inappropriate discipline; (2) follow the TEAM evaluation recommendations regarding individual counseling; (3) participate in further parenting skills training, so as to be able to demonstrate the following: communication and

cooperation skills with one another; consistent discipline appropriate for special needs children; the ability to refrain from using inappropriate language in the presence of the children; the ability to refrain from placing any of the children in the role of a caretaker; with respect to Mother, regular interaction with and affection for each child; and, finally, with respect to Father, how to perform basic parenting duties; (4) receive training in proper nutrition for the children; (5) participate in the treatment of each child's special needs; (6) participate in money management and budget training, including prioritizing financial needs, displaying consistently-appropriate decision-making, and maintaining a legal source of income; (7) maintain a safe, hazard-free environment and demonstrate the ability to meet the basic needs of the children; (8) cooperate with DCS for scheduled and unscheduled visits; (9) participate in marriage counseling; (10) participate and cooperate in the children's treatment, including attending appointments and meetings, following up on recommendations, and requesting DCS assistance to attend appointments and to understand the information presented; (11) provide DCS with information regarding all physicians Mother and Father were seeing; and (12) sign all necessary releases so that DCS could communicate with service providers. In addition, Father was required to resolve all legal issues and refrain from incurring any new issues; participate in anger management counseling until released by his counselor; and continue taking all prescribed medications. Mother was required to schedule an appointment with a psychiatrist for a medication evaluation and, if she was prescribed medication, to take it.

The evidence is clear and convincing that Mother and Father failed to substantially comply with their obligations as set forth in the permanency plan. There is evidence in the record that Father continued to use inappropriate discipline with the children. Mother and Father failed to demonstrate cooperative parenting and consistent discipline, and Mother repeatedly demonstrated a lack of interest in the children. The testimony revealed that both parents failed to make effective use of the nutritional training they had received. Mother, in particular, demonstrated a lack of interest in the children's special needs, and neither parent participated in the treatment of these special needs. While it appears that Mother and Father were provided with money management training, they failed to consistently apply what they had learned, as they experienced overdrafts and were unable to keep the child support payments for their children current. The parents have been unable to maintain a safe, stable, hazard-free home and have not demonstrated an ability to meet the children's basic needs. The parents failed to cooperate with DCS with respect to visitation, missing or arriving late for numerous sessions. The parents never participated in marriage counseling. As found by the trial court, Mother and Father "failed to attend important medical and education[al] appointments affecting their children and have demonstrated a lack of interest in those meetings." Father failed to sign the appropriate releases for DCS and failed to provide the agency with a list of his physicians. As found by the trial court, Father "continue[d] to violate the law by driving without a license" and, at the time of trial, still did not possess a valid driver's license.

While Mother and Father were able to complete some of the requirements under the plan, such as individual counseling, training with respect to parenting skills, and, for the most part, maintaining a legal source of income, it is clear that these efforts are not enough to constitute *substantial* compliance with the permanency plan, as required by the law. The evidence does not

preponderate against the trial court's findings with respect to the allegations that the parents failed to substantially comply with the permanency plan.

C.

In addressing the issue of failure to remedy persistent conditions, the court found as follows:

> [DCS] has proven that the children have been removed from the home for more than six months and that the conditions which led to removal still exist and other conditions exist which in all probability would cause the children to be subject to further abuse or neglect, making it unlikely that the children can be returned to either parent at an early date. . . . [DCS has] been involved with [Mother and Father] since 1996 and nine years later, these parents are still not able to properly provide and care for their five special needs children. These conditions have not been satisfactorily remedied and it is unlikely that they will be now or in the near future.
>
> The Court affirmatively finds that the continuation of the parent-child relationship greatly diminishes the children['s] chances of an early integration into a stable and permanent home. They have been in foster homes for nearly three years! The youngest child is only four years old!

There is ample evidence to support the trial court's holding that these conditions are unlikely to be remedied in the near future, and that the continuation of the parents' legal relationship with the children will greatly diminish the children's chances of early integration into a stable home environment. Certainly, the evidence does not preponderate against the trial court's relevant findings of fact as to this issue.

V.

The trial court found, by clear and convincing evidence, that termination is in the best interest of the children. Mother and Father do not attack this ground on appeal. In any event, after reviewing the record, we also find that the evidence does not preponderate against this finding by the trial court.

VI.

The judgment of the trial court is affirmed in part and vacated in part. This case is remanded to the trial court for enforcement of the trial court's judgment terminating the parents' rights with respect to their five children and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellants, Mary Katherine W.B. and Christopher M.B.

_____
CHARLES D. SUSANO, JR., JUDGE