IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2013 Session

**DAVID RAY HOGGATT v. LORI ANN HOGGATT**

**Appeal from the Circuit Court for Bradley County**
**No. V11954      J. Michael Sharp, Judge**

_____

**No. E2013-00508-COA-R3-CV-FILED-MAY 12, 2014**

_____

The divorce in this case brought to an end the thirteen-year marriage of David Ray Hoggatt ("Husband") and Lori Ann Hoggatt ("Wife"). The trial court classified, valued, and distributed the parties' property. On this appeal, Husband challenges aspects of the division of marital property. We modify the amount that the trial court ordered Wife to pay Husband in the property division. In all other respects, the trial court's judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined. D. MICHAEL SWINEY, J., filed a separate dissenting opinion.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, David Ray Hoggatt.

Jerry Hoffer, Cleveland, Tennessee, for the appellee, Lori Ann Hoggatt.

**OPINION**

I.

There is no transcript in the record of the one-day divorce hearing. Husband filed a Statement of the Evidence.[1] In relevant part, it recites as follows:

The parties were married on May 21, 1999.

\*     \*     \*

_____

[1]Incorrectly labeled a "Statement of *Facts*." (Emphasis added.)

The divorce was filed by the Husband on December 21, 2011.

* * *

The Husband was employed at Whirlpool at the time of the parties' marriage and he worked at Whirlpool until he was laid off based on a disability in 2007 (his full term of employment with Whirlpool was from 1995 until 2007).

The Wife was employed at Blue Cross Blue Shield when the parties married. After leaving Blue Cross Blue Shield, the Wife worked for a Home Health Agency and then took a job at Bradley Memorial Hospital where she remained until 2004. The Wife quit working during 2004 – 2006 to take care of her elderly parent[s] who were residing with the parties. The Wife did not work after the death of her parents. The wife enrolled in cosmetology school and in 2008 she obtained her cosmetologist license. The Wife thereafter became self-employed as a cosmetologist but due to unsteady income, the Wife, in 2011, obtained employment at Wal-Mart [as] a third shift stocker.

The Husband owned a mobile home at the time of the parties' marriage and he owed approximately $3,000.00.

The Wife owned a home with a significant mortgage at the time of the parties' marriage.

Within a year after the parties' marriage, the Wife sold her home and paid her pre-marital debt with any proceeds from the sale of her residence.

The parties lived primarily in the Husband's mobile home.

The parties purchased a home in 2000 for $99,000.00 with very little money down.

The money that was used for the down payment on the house was [from] the proceeds from the sale of the Husband's mobile home, approximately $6,000.

2

The parties refinance[d] the residence to $94,500.00 in 2003.

The Wife's father died in 2005, followed by the Wife's Mother's death in 2006.

The Wife was the sole beneficiary of an annuity with an approximate value of $200,000.00. The Wife began receiving proceeds from the annuity in 2006 and received quarterly payments for a period of 5 years concluding in the year 2010. The Wife received approximately $8,000 after taxes each quarter and she spilt the money equally with her sister. The Wife was under no obligation to split the money with her sister.

All of the money, including the money that was paid to the sister, was first paid into the parties' joint checking account at Tennessee Valley Federal Credit Union (TVFCU).

In addition to the annuity, the Wife inherited one-half of her parents' home which was paid for. Her sister owned the other half and together the parties rented the residence for $650.00 per month and all the money was deposited into the Husband and Wife's joint savings account with Tennessee Valley Federal Credit Union.[2]

The Wife's sister died in 2010 and the parties continued to manage the rental property of the Wife.

In 2009, the parties paid $50,000.00 towards the mortgage on their residence from their joint checking account with TVFCU.

The Husband became disabled in 2007 and received $1,500 per month from his long term disability through his employer.

---

[2]The Statement of the Evidence does not state whether Wife shared the monthly rental income with her sister. Since Wife gratuitously gave her sister half of the annuity – being a gift of $80,000 – it is logical to infer from the language of the Statement that Wife retained all of the monthly rental income. If she had shared that income with her sister, we believe the Statement would have so stated as it did with respect to the annuity. On the contrary, the Statement says that ". . . *all* the money was deposited into the Husband and Wife's joint savings account . . . ." (Emphasis added.)

3

On September 1, 2009, the Husband received Social Security Disability and back pay of $22,716.00 for unpaid benefits while his case was pending.

The parties paid $21,331.00 towards the remaining balance on the mortgage which paid the house indebtedness in full on September 14, 2009. (The same month, Husband received his Social Security back pay).

The Court valued the marital residence at $125,000.00.

Shortly thereafter the Husband received notice from his long term disability provider that he had been overpaid benefits in the amount of $19,000.00 based on what he received in back pay from Social Security. Husband owed the money directly to the long term disability provider.

The parties paid from their joint checking account $19,000 that was owed to the long term disability carrier.

Between 2005 and the filing of the divorce the Wife did not work.

During the same period of time the Husband worked for Whirlpool earning $2,000 per month and when he began receiving disability, Husband contributed $1,500 per month from his long term disability.

(Footnote added.)

The Statement of the Evidence is woefully inadequate in many respects. It fails to include (1) precise dates of various events, *e.g.*, periods of employment; (2) income earned by the parties at their respective places of employment; and (3) other pertinent information. Because of these deficiencies, we are unable to ascertain with any degree of certainty the parties' respective incomes at various times during the marriage.

## II.

The focus at trial was on the division of the marital property. After classifying the parties' property, the court valued and divided the marital estate. There is no dispute that, in fashioning its division, the trial court sought, as Wife puts it, "to balance out the equities

4

and achieve an equal division" of the non-real estate portion of their marital property. To this end, after distributing the marital property, the trial court ordered Wife to pay Husband $41,818.

Although it is not before us, the record indicates that Wife subsequently filed a motion to alter or amend the judgment. The court granted the motion in part by adjusting its calculation of the amount Wife was obligated to pay Husband in order to effectuate an equal division of the non-real estate property. The trial court thereby reduced the amount due Husband from $41,818 to $36,218. In all other respects, the original decree was not disturbed. Husband filed a timely notice of appeal.

III.

Husband presents the following issues for our review:

> 1. Did the trial court err in awarding Wife a "repayment" of $50,000 of her separate property prior to creating an equitable division of the marital assets?
>
> 2. Did the trial court make a mathematical error in dividing the remaining marital property 50/50?
>
> 3. Did the trial court err in failing to include the $9,000 from the parties' joint savings account in the equitable division?

IV.

A trial court's factual findings are presumed to be correct, and will not be overturned unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review a trial court's conclusions of law under a de novo standard with no presumption of correctness. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). A trial court has broad discretion in fashioning a division of marital property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). A finding of an abuse of discretion is usually predicated upon the court's application of an incorrect legal standard, unsound reasoning, or reliance upon erroneous facts. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

V.

A.

As can be seen, all of the issues raised by Husband concern aspects of the division of the marital property. As to this matter, we set out relevant portions of the final decree:

> The property is divided pursuant to the attached [Master Asset List].
>
> The Court awards the marital residence . . . to [Wife] at a value of $125,000.00. *The Court reduces the value of the marital residence by $50,000 based on . . . Wife's contribution of her separate property to the mortgage of the residence.*
>
> \* \* \*
>
> The total marital estate is $151,220.50[3] pursuant to the . . . Master Asset List. The total marital debt is $9,500.00.[4]
>
> The net marital estate is $138,720.50. *The net marital estate is reduce by $50,000.00 based on . . . Wife's separate property contribution*, [Wife] is required to pay [Husband] $41,818.00.
>
> [Wife] shall refinance the residence and pay to [Husband] $41,818.00 within sixty (60) days from the hearing.
>
> \* \* \*

---

[3]The Master Asset List reflects a total marital estate of $151,920.50. It appears that one item, a "Zero Turn Lawn Mower," which appears on the page listing Husband's separate property, was classified as marital property, but its $800 value was not included in the calculation of the total marital estate. We will add it as a part of the marital estate.

[4]The undisputed total marital debt is $12,500. By the court's calculation of the net marital estate, it appears that the court intended to subtract from the gross marital estate the full amount of the marital debt but that it erroneously used the figure of "$9,500" rather than the correct amount of "$12,500." We have adjusted the figures accordingly.

6

[Wife] is entitled to one-half (1/2) of 2/3 of [Husband's] pension by Qualified Domestic Relations order or $56.00 per month when [Husband] begins receiving his pension.[5]

Each party shall be solely responsible for the payment of their own [a]ttorney fees.

*    *    *

Each party shall be responsible for one-half (1/2) of the court costs in this cause.

(Emphasis and footnotes added.)

On February 8, 2013, the trial court entered an order on Wife's motion to alter or amend. Therein, the court stated:

Upon review, [Wife's] motion . . . does accurately reflect[] the correct order of the court, and more specifically, the correct mathematical calculation that the court intended.

Therefore, the [final decree] is altered to accurately reflect that [Wife] shall pay to [Husband] $36,218.25. All other aspects of the [decree] are reaffirmed. . . .

We have determined that the calculated debt due Husband is not correct. More about this later.

B.

Husband asserts that the trial court erred when it deducted $50,000 from the home value and awarded the $50,000 to Wife *as her separate property* before dividing the remainder of the home's value equally between the parties. Husband's assertion is based upon his interpretation of the trial court's words, *i.e.*, "[t]he net marital estate is reduced by $50,000 based on . . . Wife's separate property contribution . . . ." He submits that, with respect to the $50,000 in question, "any monies of Wife that could have been deemed her separate property were clearly transmuted into marital assets." In this manner, Husband essentially argues that property which once was Wife's separate property – the annuity her parents left her and certain rental income – became marital property when Wife deposited

---

[5]The trial court did not attempt to quantify the parties' respective shares of Husband's pension; nor can we because of the inadequate Statement of the Evidence.

7

those monies into the parties' joint accounts and the parties later used $50,000 from their joint checking account to reduce the debt on the marital home.

The evidence before us does not support Husband's assertion that the trial court awarded the $50,000 to Wife *as separate property*. The trial court never expressly said it was awarding Wife $50,000 as her separate property. At one point in its decree, the court said that it was giving Wife $50,000 off the top of the value of the home "based on . . . Wife's separate property contribution" and, in another place, the court said the award was "based on . . . Wife's contribution of her separate property to the mortgage,. . . ." The evidence preponderates that the distribution of $50,000 to Wife was an "off the top" division of the marital estate to Wife because of her contributions of her separate property to the marriage.

In **Brock v. Brock**, 941 S.W.2d 896, 900 (Tenn. App. 1996), this Court discussed several principles pertaining to a division of marital property that are relevant to the subject under discussion:

> In divorce cases, Tennessee recognizes two distinct types or classes of property, i.e., "marital property" as defined at T.C.A. § 36-4-121(b) (1) and "separate property" as addressed at T.C.A. § 36-4-121(b) (2) . The distinction is important because the relevant statutory provision, T.C.A. § 36-4-121(a), "provides only for the division of marital property." **Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. App. 1988). Implicit in the statute's mandate is the concept that assets properly classified as "separate property" are not divided between the parties, but rather are set aside to the spouse to whom the property is "separate" in nature. **Id**.
>
> Also implicit in the statutory scheme for the division and/or distribution of marital and separate property is the concept that the property upon which the trial court acts is, generally speaking, the property owned by the parties, individually or jointly, at the time of the divorce.
>
> \* \* \*
>
> As a corollary to this principle, and again speaking in general terms, property once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced. This is because,

8

generally speaking, a court cannot divide and/or distribute what is "not there" -- property no longer owned by the parties, individually or jointly, at the time of the divorce.

In the present case, our facts are different from those in **Brock**, in that the assets with which we are concerned – Wife's annuity and rental income from her parents' house – were not owned by her at the time of the marriage but rather were acquired during the marriage following her parents' deaths. For our purposes, however, the distinction is not important because these assets were simply another type of separate property when received by Wife. *See* Tenn. Code Ann. § 36-4-121(b)(2)(D)("[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent" within the definition of "separate property"). It is equally clear, however, that the annuity and the rental income from Wife's separate real estate formerly owned by her late parents were ultimately transmuted into marital property when they were put into the parties' joint checking and savings accounts and a portion of them applied to reduce the mortgage on the marital home.[6] In short, at the time of the divorce, Wife's once-separate assets were no longer present "in the marriage" in the same form as when Wife received them. By then, as we explained in **Brock**, the "property interest[] represented by these assets [was] merged into the 'wealth' of the marriage." **Brock**, at 901. As a result, there was no annuity or rental income subject to being classified by the trial court as Wife's "separate property." The parties' home, clearly a marital asset, remained subject to distribution. In **Brock**, we expressly rejected the proposition "that assets of a spouse at the time of marriage, but not owned by him or her at the time of the divorce, are to be carved out of the marital estate as separate property for the benefit of that spouse . . . ." **Id**. In any event, as we have previously noted, we do not believe the trial court made the award of $50,000 to Wife as separate property.

Even if the trial court erroneously attempted to award Wife $50,000 *as separate property*, this does not necessarily mean that the trial court abused its discretion in its overall division of the marital estate. As we concluded in **Brock**,

> [t]he [Husband] is not entitled to an automatic dollar-for-dollar credit against the marital estate for the value of property owned by him at the time of the marriage, but no longer owned by him at the time of the divorce. However, to the extent these interests were contributed by Husband to the wealth of the marriage, they are a proper matter to be considered in determining how the marital estate should be equitably divided. See T.C.A. § 36-4-121(c) (5). Cf. Jahn v. Jahn, 932 S.W.2d 939 [(Tenn. App. 1996)].

**Id**. We hold that the $50,000 awarded to Wife does not, ipso facto, render the division of the marital estate inequitable. The record reflects that Wife's contributions of separate property

---

[6]Obviously, as the mortgage went down, the equity went up.

9

to the marriage far exceeded those of Husband. Approximately, $80,000 of the $200,000 annuity – without question the separate property of Wife – went into the marriage.[7] In addition, rental income from property originally owned by Wife's parents – 50% of which was later gifted by them to her – went into the marriage. While the Statement of the Evidence does not quantify the total amount of the rental income that went into the parties' savings account, it is clear that the rental income was being deposited into the account for at least five years, *i.e.*, from 2007 to 2011, inclusive. Assuming all of the rent was collected, the total for this period would be approximately $39,000. Unlike the reference to the annuity, the Statement of the Evidence does not state that the rental income was being split with Wife's sister. Therefore, we assume it was not.

Husband, by contrast, contributed little separate property, *i.e.*, the proceeds from the sale of the mobile home owned by him at the time of the marriage, being $6,000. His contribution of separate property was relatively minor when compared to Wife's.

The evidence does not preponderate against the trial court's division of the value of the marital residence.

C.

Husband's next issue challenges the trial court's order reducing the amount due him from Wife from $41,818 to $36,218. We hold that the correct amount is $39,268, as will be shown below.

The trial court found the following values:

| | |
|---|---|
| Total value of home | $125,000 |
| Less: Amount to Wife based upon her contributions to the marital estate | 50,000 |
| Net value of home | $ 75,000 |
| Dodge Ram truck | 3,957 |
| Dodge van | 9,928 |
| Boat | 1,500 |
| Bank account | 1,400 |
| Bank account | 1,200 |
| Personal property | 8,935[8] |
| | $101,920 |
| Less: Marital debt | 12,500 |
| Net assets to be equally divided | $ 89,420 |

_____

[7]According to the Statement of the Evidence, the other approximately $80,000 went to Wife's sister even though, as previously noted, Wife had no legal obligation to pay any of the annuity to her sister.

[8]This figure includes a "zero turn lawn mower" valued at $800.

Wife received half of the net value of the marital residence, *i.e.*, $37,500. She also received the Dodge van ($9,928) and personal property of $8,050. She was burdened with $9,000 of the marital debt with Husband being charged with the balance of the debt. Excluding the $50,000, Wife received a net of $46,478.

Husband, on the other hand, received his half share of the remaining value of the house ($37,500), the Dodge Ram truck ($3,957), his boat ($1,500), the two bank accounts ($2,600), and personal property of $885, for a gross value of $46,442 less his share of the marital debt ($3,500). His net is $42,942. When Husband's and Wife's net awards are added together, they total $89,420, the figure shown in the above schedule.

The parties agree that, after deducting from the marital estate the $50,000 awarded to Wife, it was the trial court's intention to divide the remaining marital property evenly between them. Setting aside the issue of the house for the time being, we now proceed to schedule the distribution of the non-real estate assets:

|  | Wife | Husband |
|---|---|---|
| Non-real estate assets[9] | $17,978 | $ 8,942 |
| Less: Allocated debt | <9,000> | <3,500> |
|  | $ 8,978 | $ 5,442 |
| Less: Adjustment to Equalize Division | <1,768> | +1,768 |
|  | $ 7,210 | $ 7,210 |

Since possession of the house was awarded to Wife, she owes Husband the value of his share of the marital residence, which is $37,500, plus the equalizing figure of $1,768 for a total due from Wife to Husband of $39,268. When this amount is added to the non-real estate assets less the debt allocated to Husband, he has received $44,710, which is exactly half of the net value of $89,420 reflected above.

This is not the end of the matter, however. As discussed in the preceding section, Wife received an additional $50,000 in marital property from the equity in the marital home. When the ledger is adjusted to include this distribution to Wife, the net marital estate totals $139,420. The resulting overall property division is $94,710, or 67.93%, to Wife and $44,710, or 32.07%, to Husband.

Again, "[t]rial courts have wide discretion in dividing the marital estate." **Dilley v. Dilley**, M2009-02585-COA-R3-CV, 2011 WL 2015395 at *8 (Tenn. Ct. App. M.S., filed

---

[9] For Wife, the Dodge Van and personal property; for Husband, the Dodge Ram truck, his boat, two bank accounts and personal property.

May 23, 2011)(citing ***Larsen-Ball v. Ball***, 301 S.W.3d 228, 234 (Tenn. 2010)). "[W]e are reluctant to disturb a trial court's division of marital property unless there is insufficient evidence to support the trial court's decision or the division somehow results in an error of law or misapplication of statutory requirements." ***Id***. While the trial court may have used – and we stress "may" because we do not believe it did – the wrong approach in identifying the $50,000 award to Wife, it is clear to us that Wife's contributions of the annuity money and rental income from her parents' home substantially increased the marital property. As we further observed in ***Brock***,

> Property owned by a spouse at the time of marriage, but not owned "in the marriage" at the time of the divorce, can also be significant in dividing marital property if that pre-marriage property is properly viewed as a contribution of a party "to the acquisition, preservation, [or] appreciation . . . of the marital . . . property." *See* T.C.A. § 36-4-121(c)(5). This does not mean that the property to be divided is "separate property", but rather that a spouse's contribution of his or her pre-marriage property is a factor to be considered in reaching an equitable division of the marital property. In other words, the property owned at the time of the marriage does not come into play as a "classification" matter, but rather as a factor to be considered in dividing marital property.

In dividing the marital estate, the trial court considered Wife's contributions to the "wealth of the marriage" and determined that she should be awarded a larger share of the equity in the marital home. The remaining assets were divided equally. The overall division, while not equal, was equitable. Obviously, Wife's contributions of separate property to the marriage – $80,000 and $39,000 – played a major role in the parties' accumulation of a net marital estate of $139,420. It was within the court's discretion to do what it did. The evidence does not preponderate against the trial court's division of the marital estate.

The dissent makes a number of calculations based upon a woefully inadequate Statement of the Evidence. The approach of the dissent tends to blur the parties' relative contributions of separate property to the marriage. Husband's attempt to show an imbalance of income between the parties is questionable because of the lack of precise dates and income figures in the Statement of the Evidence. But what is clear beyond any doubt is that there came a time in this marriage when there was a balance in the parties' checking account of at least $50,000. This could not have come from the parties' relatively meager incomes. It had to have come from Wife's separate property contributions. If Wife had not contributed $119,000 of separate property to the marriage, it is highly unlikely that the parties would have had much in the way of a net marital estate at the time of their divorce. They certainly

12

would not have had anything approaching $89,420, which figure represents double what Husband received ($44,710).

## D.

Lastly, Husband submits that the trial court erred in failing to include a joint savings account in the property division. Husband's argument, in its entirety is as follows:

> Although the trial court referenced the master asset list, it did not place a value on the parties' joint savings account (referred to as "Rental Account"), but did indicate it was to be divided equally. Husband should be awarded  half of the account ($9,000 at the time of hearing) . . ., which should be added to the amount owed by Wife to Husband.

At trial, Husband submitted his "proposed distribution" of the marital property. Among the marital assets, under "bank accounts," Husband listed "Rental Account" with a stated value of $9,000. It was further listed as being in Wife's possession and Husband proposed that it be divided between the parties. In the court's Master Asset List, attached to the final decree, the "Rental Account" is listed, but with no determination of value and no distribution by the trial court. In her brief, Wife simply states that "the record, the Final Decree, and the Master Asset List are devoid of any mention of a division or value placed on the account."  Wife is correct.

In short, Husband points to nothing to establish the value of any "joint savings" or "rental account" or to show even that any such account remained in existence at the time of trial. Given the sparse record, we are unable to conclude that the trial court erred when it apparently declined to assign a value and distribute this alleged marital asset at trial.

## VI.

The judgment of the trial court ordering Wife to pay to Husband $36,218.25 in the division of the marital property is hereby modified to reflect a debt from Wife to Husband of $39,268. Otherwise, the judgment is affirmed. This case is remanded to the trial court, pursuant to applicable law, for enforcement of its judgment, as modified, and the collection of costs assessed below. Costs on appeal are taxed 50% to Lori Ann Hoggatt and 50% to David Ray Hoggatt.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

13